UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT FRERCK,

           Plaintiff,

      v.

PEARSON EDUCATION, INC.,

           Defendant.

No. 11 CV 5319

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Robert Frerck, a professional photographer, claims defendant Pearson Education infringed his copyrights by publishing and distributing his photographs beyond the scope of the parties' agreements. Plaintiff also contends defendant infringed his rights by using some photographs with no permission at all. Plaintiff finally alleges defendant defrauded him by understating its plans for some of his photographs so they would cost less to license.

Plaintiff has moved for partial summary judgment as to liability on a subset of infringement claims. Defendant has moved for partial summary judgment on plaintiff's fraud claims. For the following reasons, I grant both motions.

## I.    Legal Standard

A party seeking summary judgment must show there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a). There is a genuine dispute as to a material fact if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In opposing summary judgment, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Likewise, if the nonmoving party's evidence is "merely colorable or is not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (internal citations omitted). On cross-motions for summary judgment, all facts are construed and all reasonable inferences are drawn in favor of the nonmoving party. *Garofalo v. Village of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014).

## II.    Background

Plaintiff Robert Frerck was a professional photographer engaged in the business of selling stock photographs for nonexclusive use. Dkt. 145-2 ¶ 2, Plaintiff's Response to Defendant's Separate Statement of Facts. Defendant Pearson Education was a publisher of school textbooks and other educational materials. *Id.* ¶ 1. The parties had been doing business with each other since 1992. *Id.* ¶¶ 3-4.

Whenever defendant wanted to publish some of plaintiff's photographs, it had an image permission coordinator send him a written "billing request." *Id.* ¶¶ 10, 13-14. The billing request identified the photographs being requested and the publications in which they were going to appear. *Id.* Plaintiff claims the billing requests also provided the maximum number of copies defendant intended to publish, while defendant claims they provided only an estimate. *Id.* ¶ 10, 14.

2

Plaintiff responded to the billing request by sending defendant's image permission coordinator an invoice, which contained limitations on print quantities and geographical distributions for the publications at issue. *Id.* ¶ 11; Dkt. 106-2 ¶ 9, Defendant's Response to Plaintiff's Separate Statement of Facts. The parties dispute the significance of the invoice. Defendant describes it as an acknowledgement of the billing request, a request for payment, and only one part of the parties' licensing agreement. Dkt. 145-2 ¶ 11; Dkt 106-2 ¶11. Plaintiff thinks of it as the license in its entirety—granting and setting forth specifically limited rights. Dkt. 145-2 ¶ 11; Dkt 106-2 ¶11. Plaintiff also believes that at the time defendant transmitted certain billing requests, it knew its demand for the requested photographs would be—or already was—in excess of the requested licenses. Dkt. 146-2 ¶¶ 15-16.

The parties maintained this back-and-forth for almost 20 years, but in July 2011 plaintiff brought suit. Plaintiff's Amended Complaint alleges two sets of claims. The first set comprises 3,582 separate claims of copyright infringement in violation of 17 U.S.C. § 501, *et seq*. Dkt. 105 ¶¶ 10-11, 25; Dkt. 105-1–105-4. In most instances, plaintiff acknowledges defendant had a valid nonexclusive license to copy his photos, but plaintiff claims defendant nevertheless infringed by (1) printing too many copies of the photographs, or (2) distributing the photographs too broadly. Dkt. 105 ¶¶ 10-11; Dkt. 105-1–105-4. In other instances, plaintiff claims defendant infringed by publishing his photographs with no permission whatsoever. Dkt. 105 ¶ 12; Dkt. 105-1–105-4.

3

The second set of 12 separate claims alleges defendant committed common-law fraud under Illinois law because defendant intentionally misrepresented the number of reproductions it would make and the geographic areas in which it would distribute them, intending that plaintiff would rely on those misrepresentations to his detriment by charging a lower fee. Dkt. 105 ¶¶ 11, 28; Dkt. 105-1–105-4.

Plaintiff has moved for partial summary judgment as to liability on a subset[1] of his copyright claims. Dkt. 98; Dkt. 98-13. Defendant has moved for partial summary judgment on plaintiff's fraud claims. Dkt. 130.

## III.  Analysis

### A.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff believes no material fact is genuinely in dispute and that he is entitled to judgment as a matter of law. Defendant disagrees and identifies four threshold areas of dispute: (1) defendant's affirmative defenses generally, (2) the statute of limitations, (3) the doctrine of laches, and (4) implied license. Defendant also believes elements of plaintiff's copyright claims remain genuinely in dispute.

#### 1.      Threshold Issues

##### a.      Affirmative Defenses

Plaintiff is not entitled to summary judgment, defendant argues, because his opening brief does not preemptively tackle all of its affirmative defenses. Defendant

---

[1] Plaintiff requested "a judgment of liability against [defendant] for 439 claims of copyright infringement . . . [as] identified in Exhibit 1 to the Declaration of Alex Kerr filed with [plaintiff's] motion." Dkt. 98 at 1. That exhibit, however, identifies only 347 claims. Dkt. 98-13. Additionally, plaintiff has withdrawn his motion as to lines 80, 96, 166, and 347 of Exhibit 1 to the Kerr Declaration. Dkt. 111 at 15; Dkt. 98-13. Thus, I understand plaintiff to be requesting a judgment of liability on 343 claims.

identifies two decisions in which courts have held that a plaintiff's opening brief must refute affirmative defenses. *Amwest Surety Insurance Co. v. Szabo*, 2001 WL 1230643, \*4 (N.D. Ill. Oct. 11, 2001); *Navistar International Tranportation Corp. v. Freightliner Corp.*, 1998 WL 786388, \*2 (N.D. Ill. 1998).

Respectfully, I am not persuaded by these cases. Instead, I agree with those decisions in which courts have required the defendants to raise their affirmative defenses in their opposition briefs. *See, e.g.*, *United Mine Workers v. Pittston Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993); *Pandrol USA, LP v. Airboss Railway Products, Inc.*, 320 F.3d 1354, 1366 (Fed. Cir. 2003); *United Central Bank v. Wells Street Apartments, LLC*, 957 F.Supp.2d 978, 987-88 (E.D. Wis. 2013). First, when a plaintiff moves for judgment as a matter of law on an entire claim, he implicitly contends there is no genuine dispute about any fact material to the defendant's affirmative defenses. Indeed, a dispute over a fact material to an affirmative defense precludes summary judgment. Second, when—as here—the defendant takes a shotgun approach to affirmative defenses, judicial economy is best served by forcing it to identify and argue only those defenses that matter.[2]

### b. Statute of Limitations

Defendant argues that a genuine dispute over whether plaintiff's claims are time-barred precludes summary judgment. Under 17 U.S.C. § 507(b), no action for copyright infringement "shall be maintained . . . unless it is commenced within three years after the claim accrued." In determining when a copyright claim

---

[2] I note that many of defendant's "affirmative defenses" are actually not—they are "argumentative denials," which would not require plaintiff's attention even under defendant's proposed rule.

5

accrues, courts in the Seventh Circuit apply the "discovery rule." The "statute of limitations starts to run when the plaintiff learns, *or should as a reasonable person have learned*, that the defendant was violating his rights . . . ." *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (emphasis added).[3] Because plaintiff filed his complaint on August 5, 2011, Dkt. 1, any claims he reasonably should have learned of before August 5, 2008, are barred.

In July 2008, Julie Orr, defendant's Manager of Image Permissions, notified plaintiff that defendant had exceeded the print run relating to several products in the *Realidades* series.[4] Dkt. 106-7 at 49:7-21, Deposition of Robert Frerck. Orr then came back to plaintiff and told him that, in fact, there had been no overrun on two of the "Levels" within that series. Dkt. 111-3 at 57:24-58:10. Plaintiff provided defendant a retroactive license to cover the overrun that had occurred. Dkt. 106-14. Plaintiff did not ask Orr if defendant was overrunning his photographs on other products, but Orr testified that—had he asked—she would have told him that they were. Dkt. 106-13 at 29:3-10, Deposition of Julie Orr. On this evidentiary basis, defendant sees a genuine dispute of fact over whether a reasonable person in

---

[3] In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, ___ U.S. ___, 134 S. Ct. 1962 (2014), the Supreme Court said "[a] copyright claim . . . arises or 'accrue[s]' when an infringing act occurs." 134 S. Ct. at 1969. Defendant takes this to mean that I should not apply the discovery rule in this case. Dkt. 138 at 1-2, Defendant's Notice of Supplemental Authority. I disagree. In *Petrella*, the Supreme Court explicitly said it was not passing on the question of the "nine Courts of Appeals [who] have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" *Id.* at 1969 n. 4. Since the Court did not take up this issue—and because I am bound to follow Seventh Circuit precedent—I will continue to apply the discovery rule.

[4] None of the *Realidades* claims are at issue in plaintiff's motion for summary judgment. Dkt. 111 at 8.

plaintiff's position would have actively investigated overruns on defendant's other products. Dkt. 106 at 10-12.

I find no genuine dispute on this score. No reasonable jury could conclude that plaintiff, based on the experience he had with defendant, should have inquired into whether it was infringing his copyrights. Orr's disclosure was voluntary and proactive. Defendant seemed to take it upon itself to remedy an occurrence that was—from plaintiff's perspective—the first of its kind over a nearly 20-year relationship. Dkt. 111-3 at 58:11-59:9. Furthermore, after her initial report, Orr told plaintiff the overrun had actually been smaller than first believed. Again, the fulsome communication belied any hint of wrongdoing.

In sum, nothing in the record suggests that a person in plaintiff's shoes reasonably should have learned that defendant was "violating his rights." *Gaiman*, 360 F.3d at 653.[5]

### c.    Laches

Defendant argues that plaintiff's delay in filing suit creates a genuine issue of fact concerning the defense of laches. For laches to apply, the party asserting the defense must demonstrate: (1) an unreasonable lack of diligence by the party against whom the defense is asserted, and (2) prejudice arising therefrom. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). "A defendant has been

---

[5] Defendant's argument fails for another reason. Even if I were to find a genuine dispute concerning what a reasonable person would have done, defendant has provided insufficient evidence for me to determine which of plaintiff's 343 claims would be barred and which would not. In other words, for any given publication-license pairing, I cannot identify the date on which defendant published or distributed the first infringing book. The statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and so it is defendant's burden to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex*, 477 U.S. at 322-23.

prejudiced by a delay when the assertion of a claim available some time ago would be 'inequitable' in light of the delay in bringing that claim . . . [and] prejudice ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Id*. at 824 (internal quotation omitted).

As with defendant's statute of limitations defense discussed above, I find plaintiff did not demonstrate an unreasonable lack of diligence. Defendant has also provided no evidence that it changed its position in any way due to plaintiff's delay. Defendant argues only that it "could have taken steps to remove and replace [plaintiff's] photographs." Dkt. 106 at 12. This unsupported statement is insufficient given defendant's burden at this stage.

### d.    Implied License

Plaintiff's motion must be denied, defendant argues, because there is a genuine dispute of material fact regarding whether—through the parties' course of conduct—defendant was granted an implied license to use plaintiff's photographs beyond the scope of the invoices. An implied license is an affirmative defense to a claim of copyright infringement. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996).

The Seventh Circuit has so far recognized only a narrow circumstance in which an implied license is granted. *See Kennedy v. National Juvenile Detention Association*, 187 F.3d 690, 694 (7th Cir. 1999) (citing *Shaver*, 74 F.3d at 776). "An implied nonexclusive license has been granted when (1) the licensee requests the creation of a work; (2) the licensor creates the work and delivers it to the licensee

who asked for it; and (3) the licensor intends that the licensee copy and distribute the work." *Id*. Here, there is no evidence that defendant requested the creation of plaintiff's photographs. Under Seventh Circuit precedent, therefore, defendant's argument for an implied license fails.

Relying on decisions from outside this circuit, defendant argues that implied licenses may arise in situations other than the narrow work-for-hire arrangement found in *Shaver*. Dkt. 106 at 7. Specifically, defendant relies on a decision from the Ninth Circuit in which the court affirmed a finding of implied license on the basis of the parties' course of conduct. *Falcon Enterprises, Inc. v. Publishers Service, Inc.*, 438 Fed. App'x 579 (9th Cir. 2011). In *Falcon*, the court held that the parties' conduct "demonstrate[d] that [copyright holder] granted Publishers an ongoing nonexclusive implied license to use its content for a fee." *Id*. at 581. The court found several factors to be relevant: (1) the "frequent and informal interactions between the parties" in lieu of "express license[s]"; (2) that "[m]ost images that [copyright holder] submitted to Publishers . . . were previously published 'second rights' images worth little and offered to Publishers without any restrictions or promises of exclusivity"; (3) the copyright holder "never declined to give Publishers a nonexclusive license to publish its images"; and (4) that "Publishers owed [the copyright holder] payment only after it published [the] copyrighted images". 438 Fed. App'x at 581.

I do not reach the question of whether the broader rule articulated in *Falcon* is consistent with Seventh Circuit precedent because I hold that, in any event,

9

defendant fails to present a genuine dispute of material fact under the *Falcon* test as well. In contrast to the "frequent and informal interactions between the parties" in *Falcon*, plaintiff and defendant abided by a formal protocol: First, defendant issued billing requests to plaintiff asking to reproduce his photographs in defendant's publications. Second, in response to these requests, plaintiff issued limited licenses in the form of invoices.

Additionally, in nearly every transaction, defendant was required to pay for the license before publishing the photographs. To be sure, on one occasion plaintiff expressly granted defendant a retroactive license after defendant exceeded the original license. Dkt. 106 at 6; Dkt. 106-12 ¶ 10, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatory Requests. And three times[6] plaintiff completed permission-related documentation after photographs had been published. Dkt. 106 at 6; Dkt. 106-12 ¶ 11. But these limited exceptions over a nearly 20-year relationship nevertheless do not amount to a "course of conduct," nor could a reasonable jury find as much.

Finally, the mere fact plaintiff never refused defendant a license does not mean defendant was free to use plaintiff's photographs beyond the scope of those licenses or that plaintiff was barred from refusing a request. Defendant has offered no authority that goes so far.

Defendant also cites two district court opinions in which the judge denied a motion for partial summary judgment because the parties' course of conduct created

---

[6] One of these three publications, *Realidades Levels A, B, 2,* by Boyles-Met-Sayers-Sargin is the publication for which plaintiff granted defendant a retroactive license. Dkt. 106-12 ¶¶10-11.

a genuine issue of material fact about an implied license. *Alaska Stock, LLC v. Pearson Education, Inc.*, 975 F.Supp.2d 1027, 1041-43 (D. Alaska 2013); *Psihoyos v. Pearson Education, Inc.*, 855 F.Supp.2d 103, 124-125 (S.D.N.Y. 2012).

In *Alaska Stock*, the court found a factual dispute due to an admission by the plaintiff's president that, even after the he knew Pearson was over-printing photographs, the plaintiff continued to send the defendant license agreements post-publication. 975 F.Supp.2d at 1042. Here, however, there is no evidence of plaintiff knowingly and continuously ratifying an inverted licensing protocol, so *Alaska Stock* does not apply.

In *Psihoyos*, the court applied a "meeting of the minds" test. 855 F.Supp.2d at 124. Even if I were to adopt that approach in this case, there is no evidence the parties both believed defendant could use plaintiff's photographs beyond the scope of the written invoices. To the contrary, the undisputed record shows both sides believed defendant needed to operate within the bounds of those terms. For example, Orr testified that (1) it was her "practice" to obtain permission before using images, (2) once defendant exceeded a license limit it "essentially ha[d] no permission to use that photograph," and (3) if the print quantity was over the licensed quantity defendant was "to get additional permissions." Dkt. 111-2 at 16:12–20, 22:3–6, 28:13–19. For his part, plaintiff declared that he "trusted and expected that [defendant] would comply with the license limits or seek license renewals as needed." Dkt. 98-3 ¶ 9.

In sum, this case clearly does not fit the narrow Seventh Circuit definition of implied license, but even applying the broader tests of other courts, defendant has failed to demonstrate a genuine dispute of fact on this defense.

## 2.    Copyright Infringement

To prove copyright infringement a plaintiff must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). If the plaintiff has granted the defendant a license, the second element is satisfied by showing that the license was limited in scope and that it has been exceeded. *See Shaver*, 74 F.3d at 775 ("The licensee violates the copyright by exceeding the scope of [the] license").

Plaintiff presents proof that he created the photographs at issue and that he holds a copyright to each one. Dkt. 98-2 ¶¶ 6-7. Defendant does not dispute that plaintiff created these photographs. Dkt. 106-2 ¶ 6. And though defendant does not admit either that plaintiff holds a legal copyright to the photos, or that the photos are the subject of a valid Certificate of Copyright Registration, Dkt. 106-2 ¶ 6-7, defendant has not presented any evidence to contrary. Nor has it substantively argued to the contrary in its brief. I therefore find that plaintiff has satisfied the first prong of the copyright infringement test with regard to the images identified in Exhibit 1 to the Declaration of Alex Kerr.

Next, plaintiff points to business records defendant produced in discovery to support his claim that defendant exceeded the scope of the licenses. Dkt. 98 at 7-8;

Dkt. 98-12 ¶¶ 2-8. According to plaintiff, "Global Rights Data Warehouse" reports show how many copies defendant made of the publications at issue, s*ee* Dkt. 98-14– 98-39, while "Geography Reports" show where in the world defendant distributed the publications at issue, s*ee* Dkt. 98-40–98-46. For every claim in plaintiff's motion, these reports show defendant printed more copies than the pertinent license allowed (when defendant had a license), distributed the photos in more countries than the pertinent license allowed (when defendant had a license), or both. *See* Dkt. 98-13. In addition, plaintiff declared under penalty of perjury that for each of the publications at issue, he "reviewed a copy of the student or teacher editions and confirmed that the Photographs are included in the publications . . . ." Dkt. 98-3 ¶ 15.

Defendant argues plaintiff's evidence is insufficient. It dismisses as "conclusory" plaintiff's declaration that he personally checked each publication. Dkt. 106 at 13. To that end, defendant notes that neither party produced six of the publications at issue (underlying 25 claims), which makes it impossible to verify whether plaintiff's 25 photographs were actually published. *Id*. at 13-14. Along this same line, defendant generally disputes how probative the Global Rights Data Warehouse evidence is of how often defendant actually used plaintiff's photographs because, according to defendant's Rule 30(b)(6) designee, (1) images can be "dropped at the last minute in a last minute editorial change," and (2) defendant "'has been going through a replacement process' to determine where defendant's images were

potentially used and has tried to 'replace those images for future printings.'" Dkt. 106 at 14 n. 7 (quoting Dkt. 106-11 at 68:3-9, 73:20-74:11).

In response, plaintiff says he stands by his declaration, but also supplements the record with scans of the publications at issue (including the missing six). Dkt. 111 at 14. Plaintiff further explains that he did not make the six publications available to defendant because "in certain instances, he returned copies to resellers or he examined the books at a public library." *Id.* at 14-15 n. 75.

Plaintiff's evidence satisfies his initial burden of demonstrating that no genuine dispute exists as to whether defendant exceeded the scope of the licenses. Defendant's own business records plainly show that the publications at issue were produced and distributed in excess of what the relevant licenses allowed. Plaintiff submitted a declaration swearing that he personally reviewed a copy of each publication and verified that it contained the subject photos.[7]

Defendant's evidence fails to satisfy its counter-burden of presenting a genuine dispute of material fact. The record is devoid of any evidence that defendant actually removed any of plaintiff's photographs during last-minute

---

[7] To that end, this case differs materially from one of defendant's other infringement cases, *Pacific Stock, Inc. v. Pearson Education, Inc.*, in which the district court held that "questions of fact about Pearson's actual use of the stock photographs preclude[d] a grant of summary judgment to Pacific Stock." 927 F.Supp.2d 991, 992 (N.D. Ill. 2013). As here, defendant argued in *Pacific Stock* that the Global Rights Data Warehouse report "d[id] not speak to whether any of the images [were] actually used in a textbook" because "images may not have been included in the textbooks as a result of last-minute editorial decisions" and also because "when Pacific Stock began questioning Pearson's use of the images, Pearson began removing the photographs from the textbooks." *Id.* at 995. Significantly, in *Pacific Stock*, "it turn[ed] out that no one, not even Pacific Stock, ha[d] actually reviewed the textbooks to determine whether the images [were] actually included in them." *Id.* The plaintiff failed to undertake that effort even though "Pearson admitted at the hearing that, if the textbooks contained the images, Pearson had exceeded the numerical limits of various licenses." *Id.* Finding the plaintiff had presented "an insufficient basis for summary judgment," the court denied the plaintiff's motion. *Id.* at 998.

editorial changes. Likewise, there has been no proof presented that defendant's "replacement process" actually resulted in any of plaintiff's photographs being pulled so as to affect the accuracy of the data contained in the Global Rights Data Warehouse report or Geography Report. The evidence defendant has presented on that score is "not significantly probative" because it does not assert that plaintiff's photographs were actually removed under either of the two theories. *Anderson*, 477 U.S. at 249-50.

Although reasonable inferences must be construed in defendant's favor on plaintiff's motion, it would not be reasonable to infer from defendant's Rule 30(b)(6) testimony that plaintiff's photographs were actually removed. In sum, I find that "the record taken as a whole could not lead a rational trier of fact to find for [defendant]," and thus "there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

### B.    Defendant's Motion for Partial Summary Judgment

A claim of common-law fraud under Illinois law requires proof of five elements: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from the reliance on the statement. *Massuda v. Panda Express, Inc.*, __ F.3d __, 2014 WL 3566419, *4 (7th Cir. July 21, 2014). "[A] party can satisfy the fraudulent intent element by proving that a misrepresentation was made

knowingly or with a reckless disregard for its truth or falsity." *Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 125 F.3d 468, 479 (7th Cir. 1997).

Plaintiff alleges defendant committed fraud several times by telling him it would use his photographs to a small extent when, in fact, defendant knew it would use the photographs to a greater extent. Dkt. 145 at 1, Plaintiff's Response in Opposition to Defendant's Motion for Partial Summary Judgment. Defendant's alleged aim was to pay less for the licenses. *Id.*

According to plaintiff, "the identity of the persons making the misrepresentations, the time, place, and content of the misrepresentations, and the method by which the misrepresentations were communicated to [him]" are all contained in Exhibits E–P of his Amended Complaint. Dkt. 105 ¶ 10. Each contains a billing request from defendant along with the corresponding invoice-license from plaintiff. Dkt. 105-8–105-19. The only people named in the billing requests—and so the only "persons making the misrepresentations"—are defendant's image permission coordinators. *Id.*; *see also* Dkt. 145-2 ¶ 17 ("The only alleged misrepresentation that [plaintiff] relies on for the basis of his fraud claims are [defendant's] billing requests issued by specific image permission coordinators at [defendant]").

Plaintiff seeks to prove "Pearson's" knowledge, or reckless indifference, with reference to defendant's internal forecasts, which—according to plaintiff—demonstrate that at the time of the requests "Pearson" knew it would print more copies than it was requesting permission to print. Dkt. 145 at 1; Dkt. 145-9, -11, -12.

"Pearson" allegedly also knew it had sold more copies of prior versions of the publications than were being requested for the new versions. Dkt. 145 at 1-2; *see e.g.*, Dkt 145-14.

Plaintiff claims it was defendant's image permission coordinators who made the false representations, though he deposed none but Julie Orr and asked her nothing about her alleged misrepresentation. Dkt. 145-2 ¶¶ 18-61. Plaintiff provides no evidence of the image permission coordinators' day-to-day job. He also provides no evidence linking a specific higher up, whose wrongful intent could perhaps be inferred, with a coordinator's specific misrepresentation.

Without any of this evidence, Plaintiff is forced to rely on the theory that defendant as a corporation had the collective wrongful intent required to support his fraud claims. Dkt. 145 at 9. The parties debate whether this is tenable and cite to the Seventh Circuit decisions, *Pugh v. Tribune Co.*, 521 F.3d 686, 697 (7th Cir. 2008) and *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 707-08 (7th Cir. 2008),[8] which pertain to pleading standards under the Private Securities Litigation Reform Act. Plaintiff's claim, however, arises under Illinois common-law not the PSLRA. *Pugh* and *Makor* are thus inapposite.

I have found no decision in which the Illinois Supreme Court or the Seventh Circuit Court of Appeals (applying Illinois law) applies the collective corporate intent concept. What the Illinois Supreme Court does recognize, though, is the basic principle that a corporation is liable for the actions of its agents when the alleged conduct falls within the scope of the agent's employment. *See Wilson v. Edward*

---

[8] The parties discuss other decisions on this issue, but none binds or persuades me.

*Hospital*, 2012 IL 112898, ¶ 18 (2012). This law, which demands an individual analysis (e.g., was she an agent? did the conduct fall within her scope?), is the law I will apply.

Plaintiff has failed to raise a genuine dispute of material fact on his fraud claims because he identifies no evidence linking the image permission coordinators with anyone's wrongful intent or reckless indifference. While there is evidence that some in the company believed defendant would make more copies than the coordinators contemporaneously requested, the record contains no evidence—direct or circumstantial—that any specific person caused any specific coordinator to make any specific request. Therefore no reasonable jury could find that defendant committed fraud.

## IV. Conclusion

Plaintiff's motion for partial summary judgment, Dkt. 98, is granted on the claims identified in Exhibit 1 to the Kerr Declaration, except for those at lines 80, 96, 166, and 347, which were withdrawn. Defendant's motion for partial summary judgment, Dkt. 130, is granted. By separate order, the court will address the continued sealing of any exhibits at issue in this opinion.

ENTER:

Manish S. Shah
United States District Judge

Date: 8/11/14

18